3 U.S. 336 (____)
3 Dall. 336
JENNINGS et al. Plaintiffs in Error,
versus
the Brig PERSEVERANCE, et al.
Supreme Court of United States.

Du Ponceau and Robbins, for the Defendant in error.
E. Tilghman, for the Plaintiff in error.
*337 PATERSON, Justice
Though I was silent on the occasion, I concurred in opinion with Judge Wilson upon the second rule laid down in Wiscart v. D'Auchy; and, of course, the court were divided, four to two, upon the decision. I thought, indeed, that excluding a consideration of the evidence (which, virtually, amounts to a statement of facts) was shutting the door against light and truth; and was leaving the property of the country too much to the discretion and judgment of a single Judge. But conceiving myself bound by the rule, and that, in some shape, the facts must be made to appear on the record, I have always since thought it my duty to make a statement, where the counsel would not, or could not, agree in forming one.
As to the present point, though there is no express determination, it was the subject of discussion among the Judges at their chamber; an opinion was formed, but not delivered, by the same majority, that established the second rule in Wiscart versus D'Auchy; and the reasoning of the Chief Justice in support of that rule, went clearly to this case. I do nor, therefore, think, that any new argument can be necessary. However disposed I might have been originally to give the most liberal construction to the act of Congress, the decision of the Court precludes me from considering the evidence, at this time, as a statement of facts; and if there is no statement of facts, the consequences seems naturally to follow, that there can be no error.
THE COURT concurring in the representation made by Judge PATERSON, they proceeded, without further argument on the principal question, to
Affirm the Decree.
E. Tilghman suggested, however, that the damages were very high, and that, in fact, an allowance for counsel fees was included, though it did not appear on the record.
Du Ponceau, urged, that the court could not travel out of the record to ascertain a fact. In the case where an allowance for counsel's fees had been struck out, that charge and all the items on which damages had been awarded, were stated in an account annexed to the record.[*]
CHASE, Justice:
An account of items, as a foundation to award damages, was exhibited in the court below: but it is a sufficient answer here, that the allowance does not appear on the record.
THE COURT concurred in this opinion; and Du Ponceau prayed an encrease of damages for the delay occasioned by bringing this writ of error, contending, that under the 23d section of the *338 Judicial Act, damages for delay were peremptorily prescribed, and that the discretion of the court only went to the award of single or double costs.
But, BY THE COURT:  The prize was sold by the agreement of the parties, the Captor and the French Consul; but the money was afterwards stopped in the hands of the Marshal, upon a monition issued by a third person (the original owner of the prize) who was not a party to the agreement. The decree must be affirmed without an encrease of damages; and the interest to the present day, must run upon the debt only, and not on the damages.
Du Ponceau, next prayed an allowance of 12 dollars and 50 cents, the cost of a printed state of the case for the use of the Judges.
But THE COURT observed, that, however convenient it might be, there was no rule authorising the charge; and, therefore, it could not be allowed.[*]
NOTES
[*] See Arcambel versus Wiseman, ant. p. 306.
[*] Though I have reported all that occurred in the Court upon the hearing of this cause, it may, perhaps, be of use to subjoin a copy of the printed case, which was allowed by E. Tilghman to be correct.
 Jennings and Venner, Plaintiffs in Error, versus the brig | Writ of Error
 Perseverance and her cargo, or the monies arising | from the Circuit
 therefrom, in the hands of William Peck, Esq. > Court, for the
 Marshal of the district of Rhode Island, and Louis | district of
 Arcambal, Claimant and Defendant in Error. | Rhode Island.

Proceedings in the District Court, 20th September, 1794.
THE now Plaintiffs in error, subjects of the King of Great Britain, file their Libel, complaining of the capture made on the 27th of July preceding, of their brig Perseverance and her cargo, on the high feas, on a voyage from Turks Island, to St. John's New Brunswick.
They state that she was captured by two armed vessels, each of about 35 tons burthen, one called the Sanspareil, the other the Senora, brought into the district of Rhode Island, under the care of John Baptiste Bernard, prize-master, sold by his order at Providence, for 5028 dollars, and the proceeds lodged in the hands of the Marshal of the district where they now are.
They complain that the Senora was originally sitted out, and the force of the Sanspareil was encreased and augmented, by adding to the number of guns and gun carriages, at Charleston, South Carolina, with intent to cruize, &c.
That at the time of capture, there were on board both the captured vessels, divers citizens of the United States, to wit, on board the Sanspareil 12, and on board the Serona 21, all of whom were aiding and assisting at the capture.
That there was no person on board of either of the capturing vessels duly commissioned to make captures, &c.
They pray restitution of the vessel and cargo, or the proceeds thereof.
PROCESS SERVED IN DUE FORM.
FIRST MONDAY IN NOVEMBER, 1794.
John Baptiste Bernard, prize-master, appears and pleads to the jurisdiction of the court  he grounds his plea upon the following reasons:
1st. That the legality of the capture had already been determined under the authority of the United States* and agreeably to the practice of nations, and in the mode required at the special instance of the Libellants, by their public Consul, resident in the said district of Rhode Island.
2d. That the custody of the proceeds of the prize had come to the Marshal in due course of law, and not under the authority of the court  therefore the disposal thereof was not under its jurisdiction.
3d. That the sale of the prize having been made on land, Admiralty had no jurisdiction.
4th. That there was an adequate remedy at common law, by an action against the Marshal for money had and received.
5th. That the prize was made from British subjects in open war, on the high feas, by the crew of the schooner Sanspareil, belonging to citizens of the French Republic, commanded by a French citizen, manned with more than two thirds of her crew by French seamen and marines, and bearing a commission of war under the French Republic.
Concludes to the jurisdiction only, prays that the court will take no further cognizance, but that the libel be dismissed.
No replication or further pleadings appear on the record, the decree of the District Court appears to have been given on the libel and plea only, and is in the following words:
Nov. 6th, 1794. `Upon mature consideration of the allegations in the `libel contained, and of the plea of the claimants against the jurisdiction `of the court thereon, and of the arguments of the counsel, &c. it `appears to me that the reasons assigned, or most of them, are to the merits `of the cause, and not to the jurisdiction of the court, that they are `altogether insufficient to take the cognizance and jurisdiction of the `court from the present cause as set forth in the said libel, and therefore `I do sustain the jurisdiction of the court thereon.'
* By documents annexed to, and making a part of the record, it appears, that previous to this suit being instituted, the Libellants, represented by the British consul, preferred the same complaints that are contained in their libel to the Governor of Rhode Island, who, in consequence of the said complaint, and in pursuance of instructions from the Executive of the United States, which are also annexed to the record, did hear the merits of the said complaint in a solemn judicial form, upon evidence produced and examined on both sides, and finally dismissed the said complaint, on the ground of its being unsupported by evidence. After this decree no rule to answer over appears to have been prayed by the libellants, no further pleadings appear upon the record, but immediately after the said decree, an entry is made in these words:
`This cause was continued to the next February term, to be heard on `the merits.'
The cause is then continued successively, by consent of the parties, to August term 1795, when the Judge prohounced his final decree; the record of which is as follows.
`This cause having been continued, by consent of the parties, from `term to term, ever since November term, in the year one thousand seven `hundred and ninety-four, for trial upon the merits  it was now `further moved by the counsel for the libellants, that the same be further `continued to next November term, to procure further evidence, `this motion was opposed by the counsel for the claimant:, for that the `cause had been continued three terms, beyond which a further indulgence `would be unreasonable. Upon a full hearing thereof, it seemed `to the court, that the cause ought not to be further continued, and the `judgment of the court was, that the said motion for a continuance be `over-ruled  Whereupon the cause being called for hearing upon the `merits, the libellants declined and refused to offer any proofs or arguments `in support of their said libel, and thereupon I do adjudge, that `the said libel be dismissed and do further adjudge, order and decree, `that the proceeds arising from the sales of the said bring Perseverance `and her cargo, in the hands of the said William Peck, amounting to `5028 dollars, be by him, the said William Peck, restored, given up, `and paid to the said John Baptiste Bernard, claimant in the said cause, `and respondent to the said libel, first deducting therefrom the duties paid `into the custom-house on the said cargo, and the commission arising on `the sales of said brig and cargo, together with such other expenses as `this court may allow or decree  and I do further order, adjudge and `decree that the said libellants pay to the said John Baptiste Bernard, `claimant in this cause, as damages occasioned by the detention of said `monies arising from the sales of the said brig Perseverance, after said `deduction so to be made as aforesaid, the interest of the same from the `24th day of September, in the year 1794, to the day of the date of this `decree, at the rate of six per cent. per annum, as the same shall be cast `and reported by the clerk of this court, upon the sum to be restored and `paid by the said William Peck, together with 300 dollars in full of all `other damages and costs sustained or expended in and about this cause."
First Monday in August, 1795.
Upon which an appeal was interposed by the Libellants.
PROCEEDINGS IN THE CIRCUIT COURT.
The first proceedings in this court are on the 20th of June 1796, when Louis Arcambal, Vice Consul of the French Republic, appears in the cause and files his claim, praying that the libel be dismissed, and the proceeds of the prize be delivered up to him with damages and costs.
He is admitted as claimant without any opposition. No further pleadings appear to have taken place in this court. On the 25th of June, 1796, the court proceeds to decree on the appeal in these words:
`Decreed, that so much of the decree of the District Court as decreed `that the libel be dismissed, be and hereby is affirmed, and that the residue `of the said decree be and hereby is reversed  and it is further ordered `and decreed, that the proceeds arising from the sales of the said `brig Perseverance in the hands of William Peck, amounting to 5028 `dollars, be by him restored and paid to Louis Arcambal, Vice Consul `of the French Republic, admitted by this court as claimant in this `cause for the use of the owners, officers, and crew of the armed schooner `Sanspareil, first deducting therefrom the duties paid into the custom-house `on the said cargo, and the commission on the sales  it is further `ordered and decreed, that the said libellants pay to the said Louis `Arcambal for the use of the owners, officers and crew aforesaid, for `damages occasioned by the detention of the said monies arising from `the sales of the said brig Perseverance and her cargo (after the deduction `aforesaid) 800 dollars, and also the interest, at the rate of six per `cent per annum, on the money in the hands of the said William Peck, `(after the deductions aforesaid) from the 24th of September, 1794, to `the date of this decree, together with the costs in the District Court, and `this court.'
Whereupon a writ of error is prayed by Thomas Jennings and John L. Venner, and allowed.
No assignment of errors appears to have been filed in the Court below, according to law[*]; the facts on which the Circuit Court founded their decree, do not appear either from the pleadings and decree itself, or from a statement made by the parties or by the court.
It is intended by the Defendants in error to object to any error in fact being assigned or argued by the Plaintiffs, agreeably to the 22d section of the judiciary act, and for the following reasons:
1. That it was the duty of the Plaintiffs in error, to see that the facts were made to appear on the record, otherwise the court will presume that the facts found by the Circuit Court were such as warranted the inference of law, which they thought proper to draw from them. That on the authority of the cases of the United States v. La Vengeance, Pintado v. Berard, and Wiscart v. Dauehy, determined at the last Supreme Court, this court cannot, without the consent of the parties, go into the examination of the evidence annexed to the record.
2. That the Defendants cannot give their consent to going to a hearing upon the evidence, because this matter has been kept depending in various shapes, for a period of almost three years, at the instance of the Plaintiffs, who have had three hearings upon the merits. 1st. Before the Governor of Rhode Island. 2d. Before the District Court. 3d. Before the Circuit Court.
3. Because the Executive of the United States, had competent authority, by the usage of nations and the law of the land, to decide, whether or not there was ground for restitution in the present case; and whether its jurisdiction be exclusive of, or concurrent with, the judicial courts, its decision, obtained on the application of the libellants, is a bar to the present suit, and even if the Governor of Rhode Island, had no legal jurisdiction or cognizance of the case, his decision ought to be final, as the award of an arbitrator, or amicable judge, agreed upon by the parties.
If, nevertheless, the Court should be of a contrary opinion, the cause will remain to be examined on the evidence, which is annexed to the record, and is too lengthy to admit of an analysis in this statement, and from that evidence the following points will arise.
1st. A point of fact: Whether the charges exhibited in the libel are supported, and if so,
2d. The point of law: Whether the facts so stated in the libel are a sufficient ground in law for a judicial restitution.
Upon the whole, the Defendants in Error pray that the decree of the Circuit Court may be affirmed with costs and damages for the delay,
[*] The general error has been assigned since the record came up. Admitted nunc pro tunc. to wit, the lawful interest of the State of Rhode Island, being six per centum per annum, on the balance in the hands of the Marshal of the said district, and also on the sum of eight hundred dollars awarded as damages by the said Circuit Court, to be computed from the 25th of June, 1796, the date of the said decree.
 ASHER ROBBINS, | Of Counsel with
 >
 PETER S. DUPONCEAU. | the Defendants,
Philadelphia, 6th February, 1796.